AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
At Albuquerque NM
JUL 3 0 2018

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Freddie SANCHEZ | ) | Case No. 18-MJ-2468 |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __7/27/2018__ in the county of __Bernalillo__ in the __Judicial__ District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) | Possession with Intent to Distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine; |
| 21 U.S.C. § 846 | Conspiracy. |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Kirk Lemmon
*Printed name and title*

Sworn before me by reasonable electronic means.

Date: July 28, 2018

_____
*Judge's signature*

City and state: Albuquerque, NM

HONORABLE STEVEN C. YARBROUGH
*Printed name and title*

## AFFIDAVIT

I, Kirk T. Lemmon, being first duly sworn, hereby depose and state as follows:

### Introduction

1. I am employed as a Special Agent with the Drug Enforcement Administration (DEA). I am currently assigned to the El Paso Field Division; Albuquerque District Office. I have been employed by the DEA as such since 2012. As a DEA Special Agent, I am authorized to investigate crimes involving the manufacturing, possession, and/or distribution of illegal substances, including violations of Title 21 of the United States Code.

2. I make this affidavit based on personal knowledge derived from my participation in this investigation, as well as information provided to me by other law enforcement officers and witnesses.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have set forth only those facts I believe are necessary to establish that probable cause exists to believe that Javier JAQUEZ and Freddie SANCHEZ unlawfully, knowingly and intentionally combined, conspired, confederated, agreed, and acted interdependently with each other and with other persons whose names are known and unknown to the Grand Jury to commit an offense defined in 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), specifically, distribution of 500 grams and more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 846, and that JAQUEZ and SANCHEZ unlawfully, knowingly, and intentionally possessed with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). I have also set forth facts establishing that there is also probable

to believe that JAQUEZ, during and in relation to these drug trafficking crimes knowingly used and carried a firearm, and in furtherance of such crime, possessed said firearm in violation of 18 U.S.C. § 924(c)(1)(A)(i). As such, I have not included each and every fact known to me concerning this investigation.

## Probable Cause

4. On July 27, 2018, I directed a DEA confidential source, hereafter referred to as CS, to purchase multiple pounds of methamphetamine from JAQUEZ. At my direction, the CS contacted JAQUEZ and negotiated the sale of twenty (20) pounds of methamphetamine. JAQUEZ agreed to provide the methamphetamine, and directed the CS to meet him (JAQUEZ) at a dirt lot just north of the McDonald's located at 150 north 98th street, in Albuquerque, New Mexico. I met with the CS at a predetermined location, and along with another agent, searched the CS and CS vehicle for contraband. No contraband was located.

5. In anticipation of the arranged methamphetamine sale, DEA agents established surveillance at Jaquez Brothers Trucking located at 10595 Central Avenue NW. I believe Jaquez Brothers Trucking is a company owned and operated by JAQUEZ. Shortly after establishing surveillance, agents observed a silver Hyundai SUV depart from Jaquez Brothers Trucking. Agents maintained surveillance of this vehicle until, at approximately 12:54 p.m., it arrived in the area of the McDonald's to meet with the CS. The vehicle contained two occupants; SANCHEZ was the driver and JAQUEZ was in the front passenger seat. Agents watched as this vehicle met with the CS, until the CS verbally signaled to agents that he/she had observed the methamphetamine. Agents converged on the vehicle to arrest JAQUEZ and SANCHEZ. However, SANCHEZ and JAQUEZ fled in the silver Hyundai.

6. SANCHEZ and JAQUEZ continued away at a high rate of speed, and later veered into on-coming traffic. Agents observed an item being thrown from the passenger window of the vehicle. Agents later recovered this item and found that it was a loaded firearm with a bullet in the chamber. Agents followed the vehicle onto a dead-end road. To prevent harm to citizens and officers, agents disabled the vehicle.

7. Agents then approached the vehicle to place JAQUEZ and SANCHEZ under arrest. As agents approached the vehicle, agents observed JAQUEZ exit the passenger side of the vehicle with a black duffle bag and throw it over the hood of the vehicle. The black duffle bag was found to contain twenty bundles. JAQUEZ and SANCHEZ were placed under arrest and later transported to the DEA Albuquerque District Office. At the DEA Albuquerque District Office, agents determined that the bundles had an approximate weight of 10,100 gross grams. The bundles contained a white crystal-like substance, which I recognized, based on my training and experience, to be methamphetamine. A representative sample of the substance was later field tested utilizing a standard field test kit, and the results yielded a presumptive positive result for the presence of methamphetamine.

8. On July 27, 2018, DEA agents also executed a search warrant at Jacquez Brothers Trucking. Agents searched a mobile home parked on the property, which contained personal and business documents in the name of JAQUEZ, as well as personal property believed to belong to JAQUEZ. In the master bathroom of the mobile home, agents located a bag found to contain nine bundles. On the floor a few feet from the bag containing the nine bundles agents located a rifle case containing a semi-automatic assault-style rifle. At the DEA Albuquerque District Office, agents determined that the bundles had an approximate weight of 4,500 gross grams. The bundles contained a white crystal-like substance, which I

recognized, based on my training and experience, to be methamphetamine. A representative sample of the substance was later field tested utilizing a standard field test kit, and the results yielded a presumptive positive result for the presence of methamphetamine.

9. In a cabinet in the master bathroom, agents also located an open plastic Ziploc-type bag containing a white crystal-like substance, which I recognized, based on my training and experience, to be methamphetamine. Agents also located a handgun on a shelf below the open plastic Ziploc-type bag. At the DEA Albuquerque District Office, agents determined that the open plastic Ziploc-type bag had an approximate weight of 435.8 gross grams. The substance was field tested utilizing a standard field test kit, and the results yielded a presumptive positive result for the presence of methamphetamine.

10. In a hamper in the master bedroom, agents located a backpack, which contained two vacuum sealed bundles of United States currency. One bundle had "38,500" written on the exterior in black marker, and the other "40." The currency was placed into a self-sealing evidence envelope, and has not been counted at this time. Based on my training and experience, I believe the two vacuum sealed bundles contain $38,500 and $40,000 United States currency. Agents also located in the backpack with the vacuumed sealed bundles of currency a small plastic baggie containing a white powdered substance. At the DEA Albuquerque District Office, agents determined the small plastic baggie containing a white powdered substance had an approximate weight of 35.3 gross grams. The substance was field tested utilizing a standard field test kit, and the results yielded a presumptive positive result for the presence of cocaine.

11. In my training and experience, the quantity and packaging of methamphetamine located in the vehicle, and as well as located in the mobile home, is consistent with distribution.

Based on the information contained herein, there is probable cause to believe that Javier JAQUEZ and Freddie SANCHEZ unlawfully, knowingly and intentionally combined, conspired, confederated, agreed, and acted interdependently with each other and with other persons whose names are known and unknown to the Grand Jury to commit an offense defined in 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), specifically, distribution of 500 grams and more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 846, and that JAQUEZ and SANCHEZ unlawfully, knowingly, and intentionally possessed with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). There is also probable to believe that JAQUEZ, during and in relation to these drug trafficking crimes knowingly used and carried a firearm, and in furtherance of such crime, possessed said firearm in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Kirk T. Lemmon
Special Agent
Drug Enforcement Administration

SL  Sworn before me by reasonable electronic means. on this 28tth day of July 2018.

HONORABLE STEVEN C. YARBROUGH
United States Magistrate Judge